**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**ST. PAUL MERCURY INSURANCE COMPANY, a Minnesota Corporation,**

Plaintiff,

v.

**JBA INTERNATIONAL, INC.,**

Defendant.

Civil No. 01-297 (MJD/JGL)

**ORDER**

---

**JBA INTERNATIONAL, INC.,**

Plaintiff,

v.

**ST. PAUL MERCURY INSURANCE COMPANY,**

Defendant.

Civil No. 01-2161 (MJD/JGL)

---

APPEARANCES

Richard D. Snyder, Esq., on behalf of JBA International, Inc.

Patricia J. St. Peter, Esq., and Vickie Lee Hilden, Esq., on behalf of St. Paul Mercury Insurance Co.

---

JONATHAN LEBEDOFF, Chief United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Chief Magistrate Judge of District Court on May 7, 2002 on JBA

FILED MAY 14 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

International's Motion to Compel Discovery (Doc. No. 35 in Case No. 01-CV-2161). The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

## I. FACTS

These cases arise from an insurance coverage dispute. The two cases have been consolidated in the District of Minnesota for discovery purposes.[1] JBA International ("JBA") is a computer software company that sells enterprise resource planning software and services to businesses. JBA purchased a technology insurance policy from St. Paul Mercury Insurance ("St. Paul") to protect itself in the event of lawsuits resulting from actual or alleged errors in its software installations. The policy at issue in this case is a "claims made" policy, which means that it applies to "claims or suits 'first made or brought' during the policy period." (St. Paul Mem. Opp. Mot. Compel at 3) (emphasis omitted). This policy was in effect from June 30, 1997 to September 21, 1999 and had a $2 million limit, which included defense costs. In addition to the "claims made" policy, JBA also purchased an umbrella policy from St. Paul which had a $7 million limit. The umbrella policy was in effect from June 30, 1998 to September 21, 1999. There is a disagreement regarding whether

---

[1] The policies which are the subject of this litigation were issued in New Jersey. JBA Int'l v. St. Paul Mercury Ins., No. 01-CV-2161, was transferred to this district from the District of New Jersey. (Doc. No. 24 in Case No. 01-CV-2161).

these collective policies are standard form policies or whether they are unique policies created specifically for software venders.

After JBA purchased its policies, it was sued by some of its customers. The central issue in the instant dispute is St. Paul's liability in those lawsuits. Specifically, the parties dispute whether the umbrella policy was in effect at the time that the underlying claims were made.

Last summer, JBA served St. Paul with document requests. JBA contends that many of St. Paul's responses are deficient. At the motion hearing, the parties stated that there were no remaining issues regarding JBA's Document Requests Nos. 4 and 29. Therefore, those portions of JBA's motion are denied as moot.

## II. DISCUSSION

The Federal Rules of Civil Procedure provide for liberal discovery. See Fed. R. Civ. P. 26(b)(1); Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); Hickman v. Taylor, 329 U. S. 495, 501 (1947). "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . [and] reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Limited only by the broad scope of Rule 26(b), a party has the right to request any information within the "possession, custody, or control" of the party being served. Fed. R. Civ. P. 34(a). Although discovery is broad, it is not limitless, and a court may limit

discovery if the discovery sought is, inter alia, cumulative or overly burdensome. See Fed. R. Civ. P. 26(b)(2).

**A. Doc. Req. No. 2**

JBA seeks "[a]ll documents relating to your drafting of the policy." St. Paul argues that it has produced all documents responsive to this request. JBA challenges this assertion because the affidavit of James Zacharski, St. Paul's Technology Claims Attorney, states that St. Paul does not have any more "non-privileged" documents responsive to this request. (Zacharski Aff. ¶ 3.) According to JBA, they are entitled to these additional documents because (1) they are not listed on St. Paul's privilege log, (2) this information is relevant, and (3) St. Paul did not conduct an exhaustive search for responsive documents.

At the motion hearing, St. Paul reaffirmed its contention that it conducted an exhaustive search for responsive documents and explained Mr. Zacharski's comments regarding privileged documents. In his search, Mr. Zacharski found only two privileged documents. These consist of handwritten notes from a conversation between a St. Paul underwriter and St. Paul's outside counsel, Beth Culp. These notes contain legal advice. These are the privileged documents Mr. Zacharski refers to in his affidavit. Other than these two pieces of paper, St. Paul asserts that it has produced every document it has which is responsive to this motion.

The Court is satisfied that St. Paul has fully responded to this document request. Absent evidence to the contrary, the Court must accept St. Paul's representation that it has complied with its discovery obligations. See Onwuka v. Fed. Express Corp., 178 F.R.D. 508, 514 n.2 (D. Minn. 1997) (citations omitted). In the instant case, that means that the Court must accept St. Paul's representation that it has produced all non-privileged, responsive documents. The Court also finds that St. Paul's representations at the motion hearing properly support its claim of attorney-client privilege. St. Paul is cautioned, however, that boilerplate privilege objections are not appropriate. See In re. Milk Prods. Antitrust Litig., 84 F. Supp.2d 1016, 1028 (D. Minn. 1997).

During the motion hearing, JBA argued that St. Paul has also failed to produce a 30(b)(6) deposition witness to discuss the topic of drafting history. St. Paul contends that this issue is not the properly before the Court. The Court agrees. JBA's motion papers do not mention a 30(b)(6) deposition notice. If this deposition notice remains in dispute, the parties are free to bring a separate motion. Accordingly, this part of JBA's motion is denied.

**B. Doc. Req. No. 9**

JBA seeks information related to St. Paul's claim handling methods. JBA argues that this material is relevant to the issues in this case. Although St. Paul originally objected to this request on the basis of relevancy

(JBA Mem. Supp. Mot. Compel at 13), in its opposition papers and at the motion hearing St. Paul only argued that it has produced all responsive documents within its control. JBA takes issue with St. Paul's search, stating that more than one person should be searching for responsive documents.

The Court finds that St. Paul has fully responded to this request. Daria Fitzgerald, Senior Claims Specialist at St. Paul, is responsible for handling all the underlying claims against JBA. (Fitzgerald Aff. ¶ 2.) Ms. Fitzgerald states that she is unaware of any internal documents responsive to this document request. (Id. at ¶ 4.) JBA does not rebut this statement. Again, in the absence of any evidence to the contrary, the Court must assume that St. Paul is complying with its discovery obligations. See Onwuka, 178 F.R.D. at 514 n.2. Furthermore, the Court does not find Ms. Fitzgerald's search inadequate. Ms. Fitzgerald is responsible for all JBA claims. She seems the best person to conduct a search for materials related to the handling of those claims. Accordingly, this part of JBA's motion is denied.

### C. Doc. Req. No. 25

JBA seeks "[a]ll communications with any State Insurance Department or other regulatory body relating to the sale or approval for sale of any of the products in the 'Network Solutions.'"

St. Paul originally objected to this request on the basis of vagueness, overbreadth, burdensomeness, relevancy, and inability to lead to

the discovery of admissible evidence. However, in its opposition papers and at the motion hearing, St. Paul confined its arguments to relevancy, overbreadth, and burdensomeness.

To support its claim that this information is relevant, JBA cites Armco, Inc. v. Travelers Indem. Co., Civ. No. 5-91-26 (D. Minn. Sept. 30, 1993). The Court agrees that Armco stands for the proposition that an insurance company's filings with regulatory agencies are relevant. See id. at 26. However, the Court does not agree that Armco stands for the proposition that St. Paul's regulatory filings with all fifty states are relevant. Indeed, the Armco court held that a document request seeking information from all fifty states was "overbroad, since the filings with any State agencies other than [the state where the policy was issued] bears little on a contract for insurance issued in [that] state." Id.

In the instant case, St. Paul offered to provide the requested information as it relates to both Minnesota and New Jersey. The Court finds this a reasonable limit on the scope of this discovery. This is especially true in this case where the information provided to all fifty states is essentially the same. (O'Keefe Aff. ¶ 5.) Accordingly, this part of JBA's motion is granted as to communications with the State Insurance Departments and regulatory bodies of Minnesota and New Jersey and denied as to communications with State Insurance Departments and regulatory bodies of other states.

**D. <u>Doc. Req. No. 28</u>**

JBA seeks "all documents that relate to reinsurance you purchased for the Policy, including faculatative reinsurance or reinsurance treaties." JBA argues that it is entitled to this information under Fed. R. Civ. P. 26(a)(1)(D) which states that a party must produce:

> any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Fed. R. Civ. P. 26(a)(1)(D). In addition, JBA avers that reinsurance information is relevant to the issue of St. Paul's intent regarding JBA's policy and to the value St. Paul placed on the JBA policies.

St. Paul responds that Fed. R. Civ. P. 26(a)(1)(D) does not require disclosure of reinsurance information. In addition, St. Paul argues that it did not purchase any reinsurance for the JBA policies and that reinsurance information must be kept confidential. St. Paul relies on the distinction between facultative and treaty reinsurance.

**1. <u>Whether Reinsurance Policies Are Discoverable</u>**

St. Paul argues that the requested information is not discoverable because it is not relevant. St. Paul relies on the distinction between facultative reinsurance, which is purchased to cover the risks associated with specific large policy exposures, and treaty reinsurance, which is purchased to cover a certain percentage of all or certain categories of the insurer's policies. <u>See</u>

Leski, Inc. v. Federal Ins. Co., 129 F.R.D. 99, 106 n.4 (D. N.J. 1989) (citing 19 Couch on Insurance 2d § 9:3 (1983)). St. Paul has only treaty reinsurance coverage for its JBA policies.

For support St. Paul cites cases, mostly from state courts, which rely on this distinction and hold that only facultative reinsurance information is discoverable. If this issue had been before this Court prior to December 1, 1993, the Court would find St. Paul's arguments persuasive. However, on that date the Federal Rules of Civil Procedure were amended to require initial disclosure for inspection and copying of:

> any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Fed. R. Civ. P. 26(a)(1)(D); see also 8 Charles Alan Wright et al., Federal Practice and Procedure § 2053 (2d ed.1994).

The Court disagrees with St. Paul's assertion that "the point of F.R.C.P. 26(a)(1)(D) . . . is primarily [for] determining whether a defendant in a tort action has the financial ability through insurance to cover any potential judgment against it." (St. Paul Mem. Opp. Mot. Compel at 17.) St. Paul provides no support for this argument and the Court's investigation of the history of Rule 26(a)(1)(D) reveals none.

Rule 26(a)(1)(D) replaced Rule 26(b)(2) and contains identical substantive language. See Fed. R. Civ. P. 26(a)(1)(D) advisory committee note

(1993 amendment); Fed. R. Civ. P. 26(b)(2) (West 1993). The only substantive difference between the two rules is that 26(b)(2) allowed discovery of insurance policies and 26(a)(1)(D) requires disclosure of insurance policies without awaiting a discovery request. The 1993 amendment is designed to expedite the discovery process and to avoid paperwork. See Fed. R. Civ. P. 26(a) advisory committee note (1993 amendment).

Since the language is identical, the Court finds the reasoning behind allowing discovery of insurance policies in the first place instructive. The 1970 comments to the Rule state that "[d]isclosure is required when the insurer 'may be liable' on part or all of the judgment . . . . It is immaterial whether the liability is to satisfy the judgment directly or merely to indemnify or reimburse another after he pays the judgment." Fed. R. Civ. P. 26(b)(2) advisory committee note (1970 amendment). This reasoning does not support St. Paul's contention that assessing tort liability was the purpose for adopting the rule.

Indeed, the two federal courts that have addressed this issue since the 1993 amendments have found that Rule 26(a)(1)(D) mandated disclosure of reinsurance policies. See Missouri Pacific R.R. Co. v. Aetna Cas. & Sur. Co., No. 3:93-CV-1898-D, 1995 WL 861147, at *2 (N.D. Tex. Nov. 6, 1995); Great Lakes Dredge & Dock Co. v. Commercial Union Assurance Co., 159 F.R.D. 502, 504 (N.D. Ill. 1995) (holding that although a discovery request for "all

documents relating to reinsurance" was too attenuated to be discoverable under Rule 26(b), disclosure of the policy itself was required under Rule 26(a)(1)(D)).

The Court finds these cases persuasive. According to the Great Lakes court, Rule 26(a)(1)(D) "does not depend on the scope of indemnification. It is enough that the reinsurers would be liable to [the] Insurers for part of any judgment based on the Policies." Id. (citation omitted); see also Missouri Pacific, 1995 WL at *2 (employing the same reasoning). This statement is in concert with the comments to the 1970 amendments. Thus, the fact the St. Paul only carries treaty reinsurance to cover the JBA claims is not persuasive. Accordingly, this part of JBA's motion is granted and St. Paul must produce copies of its treaty reinsurance policies regarding JBA in accordance with Fed. R. Civ. P. 26(a)(1)(D) within thirty days of this Order.

### 2. Whether Documents Related to Reinsurance Policies are Discoverable

Notwithstanding the above, the Court finds the rest of Doc. Req. 28 extremely overbroad. The request seeks a host of documents related to St. Paul's purchases of reinsurance, communications between St. Paul and its reinsurers, and documents related to underwriting practices and procedures. (JBA Mem. Supp. Mot. Compel at 14.) Furthermore, the Court finds the reasoning of the Armco court persuasive on this issue. The Armco court addressed whether documents "utilized in seeking reinsurance" were

discoverable. Armco, Civ. No. 5-9-26 at 46. The Armco court concluded that documentation related only to facultative reinsurance was discoverable. See id. at 47. The Court agrees with the Armco court and finds that documentation related to treaty insurance is not relevant to the issues in this case.

Treaty insurance is not purchased with any specific client in mind. See Leski, 129 F.R.D. at 106 n.4. Therefore, any information related to treaty insurance will not contain information relevant to JBA. Although JBA is entitled to copies of relevant reinsurance policies, it is not entitled to engage in a fishing expedition regarding St. Paul's valuation of potential liabilities under all its contracts. Accordingly, this part of JBA's motion is denied.

**E. Doc. Req. No. 32**

JBA seeks "[a]ll documents that relate to any reserve fund you established or maintained for losses in connection with any claim submitted on behalf of Plaintiff under the Policy."

St. Paul originally proffered boilerplate objections based on relevancy, inability to lead to the discovery of admissible evidence, and privilege. In its opposition papers and at the motion hearing, St. Paul focused on relevance. St. Paul asserts that reserve information is irrelevant because reserves are statutorily required. This fact, contends St. Paul, demonstrates that reserve information will only prove compliance with the law, not whether coverage exists under the JBA policies or whether St. Paul acted in good faith

during settlement negotiations with JBA. Furthermore, St. Paul argues that producing reserve information will result in divulgence of confidential information.

There is a lack of consensus regarding the discovery of an insurer's loss reserves. See Timothy M. Sukel & Mike F. Pipkin, Discovery and Admissibility of Reserves, 34 Tort & Ins. L.J. 191, 194 (Fall 1998). Therefore, courts must decide these issues on a case by case basis taking into consideration "the precise issues in the case, the likelihood that reserve information would be relevant to those issues, and the demonstrated purpose of setting the reserve." 17 Lee R. Russ & Thomas F. Segella, Couch on Insurance 3d, § 251:29 (2000). The Court will apply this analysis to the case at the bar.

### 1. The Issues in This Case

The case at the bar not only involves issues of coverage, but also issues of breach of good faith and fair dealing in connection with settlement negotiations. According to one expert, the relevance of loss reserves is highest in cases involving allegations of bad faith for denying coverage. See id.

### 2. The Likelihood That Reserve Information Would be Relevant to the Issues

JBA argues that reserve information is relevant to understand St. Paul's assessment of its exposure under JBA's claims, and to whether St.

Paul's settlement offers in the underlying claims were reasonably related to the reserves St. Paul set for those claims.

St. Paul responds that decisions regarding reserve funds are driven by statute and business considerations, rather than evaluations of particular claims and therefore reserve information is irrelevant to JBA's claims. In addition, St. Paul argues that disclosing reserve information would force it to divulge confidential information.

As mentioned above, there is case law to support both arguments. A number of cases have held that reserve information is not relevant for the very reasons cited by St. Paul. See Youell v. Grimes, 202 F.R.D. 643, 652 (D. Kan. 2001), vacated on other grounds by 168 F. Supp.2d 1233 (D. Kan. 2001); Rhone-Poulenc Rorer, Inc. v. Home Indemnity Co., Civ. A. No. 88-9752, 1991 WL 237636, at *4 (E.D. Penn. Nov. 7, 1991); Leski, 129 F.R.D. at 106; Stonewall Ins. Co. v. National Gypsum Co., No. 86 CIV. 9671, 1988 WL 96159, at **6-7 (S.D.N.Y. Sept. 6, 1988). Some cases even hold that reserve information is not discoverable when the case involves bad faith claims. See Fidelity & Deposit Co. of Maryland v. McCulloch, 168 F.R.D. 516, 525 (E.D. Penn. 1996) (holding that reserve information is not relevant in a case where insurer's estimation of its own liability had no bearing on the issues of the case); Couch v. Equity Gen. Ins. Co., 80 B.R. 512, 516-17 (S.D. Cal. 1987).

On the other hand, a number of cases have held that reserve information is relevant, especially in cases where bad faith is an issue. See American Medical Syst., Inc. v. National Union Fire Ins. Co., No. Civ. A. 98-1788, 1999 WL 781495 , at **2-3 (E.D. La. Sept. 29, 1999); Athridge v. Aetna Cas. & Sur. Co., 184 F.R.D. 181, 192-93 (D.D.C. 1998); North River Ins. Co. v. Greater New York Mut. Ins. Co., 872 F. Supp. 1411, 1412 (E.D. Penn. 1995); Lipton v. Superior Court, 56 Cal. Rptr.2d 341, 350 n.17 (Cal. Ct. App. 1996); Tackett v. State Farm & Cas., 558 A.2d 1098, 1101-02, 1105 (Del. Sup. Ct. 1988); Groben v. Travelers Indem. Co., 266 N.Y.S.2d 616, 619 (N.Y. Sup. Ct. 1965).

The only Eighth Circuit decision related to this issue is Kirchoff v. American Cas. Co., 997 F.2d 401 (8th Cir. 1993). In Kirchoff, the Eighth Circuit held that the lower court did not err when it admitted evidence of an insurer's case estimate. See id. at 405. In so holding, the Kirchoff court specifically declined to rule on the issue of the relevancy of reserve or case estimate information as it pertains to an insurer's liability. See id. However, the court found that since the case estimate information was admitted as evidence of bad faith in settlement negotiations, as opposed to evidence of liability, it was not error to admit the estimate information. See id.

**3. St. Paul's Reasons for Setting the Reserve**

St. Paul argues that it sets its reserves based on statutory requirements and business and accounting considerations, not based on any conclusions regarding specific claims. However, while St. Paul cites numerous cases confirming how reserves are set, it offers no factual support related to its own reserves.

**4. Analysis**

The Court does not doubt that St. Paul complies with state laws or that it makes sound business decisions. The Court also agrees with St. Paul that since reserve decisions are made based on many factors which have little or nothing to do with the facts of the underlying claim, reserve information is not relevant to the issue of liability. See Rhone-Poulenc Rorer, 1991 WL 237636 at *4. However, the same cannot be said regarding the issue of good faith in settlement negotiations. Once settlement negotiations begin, a claimant has the right to assume that its insurance provider is negotiating in good faith. In this case, the Court finds that information related to St. Paul's reserves is relevant to JBA's breach of good faith and fair dealing claims.

Breach of good faith claims are very fact specific. See Tackett, 558 A.2d at 1102. In order for JBA to prove that St. Paul violated the covenants of good faith and fair dealing, JBA needs to know what St. Paul knew during settlement negotiations. The Eighth Circuit has reasoned that when an insurer

places a high valuation on a claim, but only offers a fraction of that amount during settlement negotiations, the higher valuation is relevant to the issue of the insurer's good faith in settlement negotiations. See Kirchoff, 997 F.2d at 405. Accordingly, the Court finds that reserve information is relevant to the issues of this case and is likely to lead to the discovery of admissible evidence. Therefore, this information must be produced.

Moreover, the Court finds St. Paul's boilerplate objections based on privilege unavailing. "A blanket statement that a privilege applies simply will not suffice." In re. Milk Prods., 84 F. Supp.2d at 1028. In this respect, the instant privilege objection can be distinguished from St. Paul's objection to disclosing policy drafting documents. During the motion hearing, St. Paul explained that privilege objection to the Court's satisfaction. See Part II.A., supra. On the contrary, St. Paul has made no attempt to support its privilege objections related to reserve information. Furthermore, the Court finds that the protective order in this case will protect St. Paul's privileged and proprietary information. Since St. Paul has not proffered any objections based on burdensomeness, the Court assumes that producing this information will be a relatively easy task. Accordingly, this part of JBA's motion is granted.

**F. Consolidated Discovery**

The cases St. Paul Mercury Ins. Co. v. JBA Int'l, Inc., No. 01-CV-297 (MJD/JGL) and JBA Int'l, Inc. v. St. Paul Mercury Ins. Co., No. 01-CV-

2161 (MJD/JGL) have been consolidated for discovery purposes. (Doc. No. 30 in Case No. 01-CV-297 & Doc. No. 31 in Case No. 01-CV-2161). Therefore, the parties are advised that any future discovery motions must be filed in both cases.[2]

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

(1) JBA International's Motion to Compel Discovery (Doc. No. 35 in Case No. 01-CV-2161) is **GRANTED IN PART**, **DENIED IN PART**, and **DENIED AS MOOT IN PART** as set forth fully in the body of this Order;

(2) St. Paul Mercury Insurance Company must fully respond to any outstanding discovery requests by June 14, 2002; and

(3) The Parties must file any future discovery motions in both St. Paul Mercury Ins. Co. v. JBA Int'l, Inc., No. 01-CV-297 (MJD/JGL) and JBA Int'l, Inc. v. St. Paul Mercury Ins. Co., No. 01-CV-2161 (MJD/JGL).

Dated: May 14, 2002

JONATHAN LEBEDOFF
Chief United States Magistrate Judge

---

[2]By including both captions in this Order, the Court is confident that this Order will be docketed in both cases, notwithstanding the fact that the instant motion was only filed in JBA Int'l, Inc. v. St. Paul Mercury Ins. Co.