UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

St. Paul Mercury Insurance Company,

Plaintiff,

v. Civ. No. 01-297 (JNE/JGL)

JBA International, Inc.,

Defendant.

ORDER

JBA International, Inc.,

Plaintiff,

v. Civ. No. 01-2161 (JNE/JGL)

St. Paul Mercury Insurance Company,

Defendant.

---

Patricia St. Peter, Esq., and Eric E. Caugh, Esq., Zelle, Hoffman, Voelbel, Mason & Gette LLP, appeared for St. Paul Mercury Insurance Company.

Richard D. Snyder, Esq., Fredrikson & Byron, P.A., appeared for JBA International, Inc.

---

These actions arise from a dispute between an insured, JBA International, Inc. (JBA), and an insurer, St. Paul Mercury Insurance Company (St. Paul), about the scope and amount of insurance coverage available to JBA. The actions are before the Court on JBA's Motion for Partial Summary Judgment on St. Paul's Coverage Defenses and on St. Paul's Motion for Partial Summary Judgment on Policy Interpretation. For the reasons set forth below, the Court grants JBA's motion in part and denies St. Paul's motion.

## I. BACKGROUND

JBA is a computer software company that sells enterprise resource planning (ERP) software and services. St. Paul issued a "claims made" Technology Errors and Omissions Liability Protection policy (Policy) to JBA. The Policy was first effective from June 30, 1997, to June 30, 1998. At the end of the first policy period, JBA renewed the Policy until June 30, 1999. At the end of the second policy period, JBA renewed the Policy. JBA cancelled the Policy on September 21, 1999.

JBA sold ERP products in its "System 21" family of products to, among others, Ballet Makers, Inc., Entela, Inc., Hartmarx Corporation, Sabre Inc., Graphic Enterprises, Inc., Woodcraft Industries, Inc. (Woodcraft), Metra Electronics Corporation (Metra), and Santa Fe Natural Tobacco Company (Santa Fe). These eight companies brought lawsuits against JBA because of problems they allegedly experienced with JBA's software and services. JBA later settled these lawsuits.

The cases before the Court involve JBA's and St. Paul's dispute over the scope and amount of insurance coverage available to JBA under the Policy for the settled lawsuits. At present, JBA moves for partial summary judgment, seeking to preclude St. Paul from asserting the Policy's exclusion for criminal or intentionally wrongful acts or omissions as a coverage defense. In addition, St. Paul moves for partial summary judgment, seeking to dismiss JBA's claims for declaratory relief and breach of contract insofar as they are based on the settlements reached by JBA with Hartmarx and Sabre.

## II. DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the party opposing the motion to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**A. JBA's motion**

JBA maintains that it is entitled to summary judgment insofar as St. Paul asserts the Policy's exclusion for criminal or intentionally wrongful acts or omissions as a coverage defense to settlements reached by JBA in lawsuits against it by Sabre, Hartmarx, Entela, Graphic Enterprises, Santa Fe, Ballet Makers, Metra, and Woodcraft. In its memorandum in opposition to JBA's motion, St. Paul states that it is relying on the exclusion as an affirmative defense to coverage of JBA's settlements of the claims asserted by Sabre, Hartmarx, Entela, and Graphic Enterprises. The Court therefore grants JBA's motion insofar as the motion relates to JBA's settlements with Santa Fe, Ballet Makers, Metra, and Woodcraft.

The Court turns to the parties' arguments regarding the remaining four companies. The exclusion at issue provides:

> **Criminal or intentionally wrongful acts or omissions.** We won't cover loss that results from any criminal, dishonest, fraudulent or other intentionally wrongful act or omission committed by anyone with the consent or knowledge of you or any of your partners, directors or executive officers.

The Policy includes an example of the exclusion's application:

> *Without your knowledge, one of your employees deliberately causes a product to be released with a virus. The virus results in your customer incurring a loss. We won't apply this exclusion to a claim made against you by your customer for that loss. However, we won't protect the employee.*

JBA contends that partial summary judgment is warranted because St. Paul cannot demonstrate that the exclusion applies. *See Boddy v. Cigna Prop. & Cas. Cos.*, 760 A.2d 823, 828 (N.J. Super. Ct. App. Div. 2000) (stating that insurer bears burden of establishing exclusion's applicability).[1] Conceding that the issue of whether its employees engaged in criminal, dishonest, fraudulent or other intentionally wrongful acts or omissions presents "a host of factual and legal issues," JBA does not move for summary judgment on that ground. Instead, it asserts St. Paul can establish neither that a loss resulted from the alleged misconduct of JBA's employees nor that the alleged misconduct was committed with "the consent or knowledge" of JBA or its executive officers.

In opposition to JBA's motion, St. Paul argues that the motion is premature. Under New Jersey law, an insured bears the burden of demonstrating that a claim falls within the terms of a policy. *Reliance Ins. Co. v. Armstrong World Indus., Inc.*, 678 A.2d 1152, 1158 (N.J. Super. Ct. App. Div. 1996). An insurer bears the burden of demonstrating that a claim falls within an exclusion. *Princeton Ins. Co. v. Chunmaung*, 698 A.2d 9, 16-17 (N.J. 1997). Because JBA did not satisfy its burden of proving that it is entitled to coverage, St. Paul contends that the burden has not shifted to it to demonstrate the applicability of the exclusion for criminal or intentionally wrongful acts or omissions.

---

[1] By Order of September 30, 2003, the Court assumed that New Jersey law applies to these actions. Neither St. Paul nor JBA argues against the application of New Jersey law.

The Court does not agree that JBA must prove its entitlement to coverage before testing the sufficiency of St. Paul's defense. A motion for partial summary judgment "may be made by a plaintiff to test a defense's sufficiency." 10B Charles Alan Wright et al., *Federal Practice and Procedure* § 2734 (3d ed. 1998). Accordingly, the Court rejects St. Paul's argument that JBA's motion is premature.

As to whether the alleged misconduct was committed with the "consent or knowledge of [JBA] or any of [its] partners, directors or executive officers," there is evidence in the record that JBA pursued a "very aggressive" development of the products sold to Sabre, Hartmarx, Entela, and Graphic Enterprises. JBA sold its Style product to Hartmarx and its System 21 product to Sabre, Entela, and Graphic Enterprises. Style is a version of System 21. The record also contains evidence demonstrating that some of JBA's executive officers had knowledge of problems related to the quality of the Style product before JBA entered into contracts with Hartmarx, Entela, and Graphic Enterprises and during the development of the product for Sabre. Viewing the record in the light most favorable to St. Paul, a reasonable fact-finder could conclude that JBA's employees engaged in "criminal, dishonest, fraudulent or other intentionally wrongful" conduct with the consent or knowledge of JBA or its directors or executive officers.

JBA also asserts that St. Paul cannot establish that a loss resulted from the alleged misconduct. Because St. Paul did not participate in the settlement negotiations, JBA argues, St. Paul cannot demonstrate what role, if any, that the alleged misconduct of JBA's employees played in the settlements. In this case, it is undisputed that JBA's settlements with Hartmarx, Sabre, Entela, and Graphic Enterprises included fraud or misrepresentation claims. Viewing the record in the light most favorable to St. Paul, a reasonable fact-finder could conclude that a loss resulted from the alleged misconduct of JBA's employees. For these reasons, the Court denies

JBA's motion insofar as the motion relates to JBA's settlements with Sabre, Hartmarx, Entela, and Graphic Enterprises.

**B. St. Paul's motion**

By Order of September 30, 2003, the Court denied St. Paul's Motion for Partial Summary Judgment Declaring No Coverage Exists for the *SABRE* Claim and Motion for Partial Summary Judgment Declaring that St. Paul has Fulfilled its Obligation to JBA for the *Hartmarx* Claim. The Court assumes the reader's familiarity with that Order. Briefly, the Court interpreted the Policy to "allow[] for the assignment of a claim or suit to a policy period before the claim or suit is actually made," recognized that the Policy would not cover a claim or suit that was reasonably foreseeable before its effective date of June 30, 1997, and declined to reach the issue of whether to enforce the Policy as written without additional argument on the "reasonable expectations" doctrine. St. Paul now moves for partial summary judgment to dismiss JBA's claims as they relate to the Sabre and Hartmarx settlements.

The Court begins by setting forth several Policy provisions. The Policy applies to "claims or suits for covered loss only when they're first made or brought while this agreement is in effect." A "claim" is a "demand which seeks damages," and a "suit" is a "civil proceeding which seeks damages." The Policy defines when a claim or suit is first made or brought:

> We'll consider a claim or suit for covered loss to be first made or brought on the earliest of the following dates:
>
> ●The date that we or any protected person receive a written claim or a written notice of suit.
>
> ●The date that we receive a notice of an error from any protected person. However we won't accept such a notice unless it also describes what loss may result from the error.
>
> ●The date that any protected person could reasonably foresee that a claim or suit would be made or brought.

> We consider it reasonable that a protected person could foresee a claim or suit being made or brought if one of your customers has done any of the following:
>
> ●Repeatedly complained to the protected person about one or more problems with your computer or electronic products or services.
>
> ●Sent their attorney a copy of one or more of the written complaints that they had sent to the protected person.
>
> ●Refused to pay all or part of your charges for those products or services.
>
> ●Advised the protected person that those products or services have failed to perform in compliance with your promises, representations and warranties.
>
> ●Demanded a refund of part or all of their payment for those products or services.
>
> ●Threatened to take legal action against you.

St. Paul argues that the Court should grant partial summary judgment because Sabre first made its claim before June 30, 1997, the Policy's effective date. According to St. Paul, Sabre repeatedly complained to JBA about JBA's products and services, sent its attorney a copy of a written complaint that had been sent to JBA, and advised JBA that JBA's products and services failed to comply with JBA's promises, representations, and warranties before the Policy's effective date. With respect to the Hartmarx settlement, St. Paul asserts that it has fulfilled its obligation to JBA. It contends that Hartmarx first made its claim during the 1997-98 policy period and that payments to JBA have exhausted the policy period's limit. According to St. Paul, Hartmarx repeatedly complained to JBA about JBA's products and services, advised JBA that JBA's products and services did not comply with JBA's promises, representations, and warranties, and refused to pay all or part of JBA's charges during the 1997-98 policy period.

With regard to the concerns raised in the September 30 Order, St. Paul first argues that it is entitled to partial summary judgment because JBA has consistently maintained that a claim or

suit must be assigned to the policy period in effect when the claim or suit is actually made. In the briefing of St. Paul's previous motions, JBA argued *inter alia* that the Policy must be interpreted in accord with the reasonable expectations of participants in the ERP industry. Specifically, JBA asserted that determination of when a claim or suit is first made should depend only on events "if they are the kind that would make a reasonable person in the ERP industry actually foresee that a claim or suit would be brought." Accordingly, the Court rejects St. Paul's argument.

St. Paul next argues that partial summary judgment is appropriate because *Zuckerman v. National Union Fire Insurance Co.*, 495 A.2d 395 (N.J. 1985), addresses any concerns raised by the Court in the September 30 Order. According to St. Paul, *Zuckerman* recognizes that retroactive coverage that precludes claims that the insured should have reasonably foreseen when the policy issued is not unduly restrictive. The policy at issue in *Zuckerman* afforded the insured unlimited retroactive coverage, "excluding only those claims based on past conduct that the insured knew, or could have reasonably foreseen, might lead to a claim or suit." *Id.* at 403; *see id.* at 397 (quoting policy language). With regard to the exclusion of foreseeable claims, the New Jersey Supreme Court stated:

> The reasonableness of excluding claims based on prior conduct that the insured could have reasonably foreseen might serve as the basis for a future claim is apparent. The insurance company is entitled to protect itself against the professional who, recognizing his past error or omission, rushes to purchase a "claims made" policy before the error is discovered and a claim asserted against him.

*Id.* at 403 n.3.

In this case, like *Zuckerman*, the Policy includes the date that a "protected person could reasonably foresee that a claim would be made or brought" within the definition of when a claim is first made. The Court recognized in the September 30 Order that the Policy would not cover a

claim or suit that was reasonably foreseeable to JBA before June 30, 1997. Unlike *Zuckerman*, however, the Policy deems a claim or suit foreseeable and "first made" upon the occurrence of any of six events, four of which allegedly occurred in these actions,[2] without regard to whether the claim or suit is actually reasonably foreseeable.[3] Accordingly, the Court rejects St. Paul's assertion that *Zuckerman* reveals that the Policy's definition of when a claim or suit is first made is reasonable as a matter of law.[4] In fact, *Zuckerman* suggests that the New Jersey Supreme Court would not find the Policy's definition of when a claim or suit is first made reasonable as a matter of law. *Zuckerman* described the claims-made policy as "contain[ing] no unusual limitations in its retroactive coverage." *Id.* at 403. Again, the policy excluded "*only* those claims based on past conduct that the insured knew, or could have reasonably foreseen, might lead to a claim or suit." *Id.* (emphasis added).

"The fundamental principle of insurance law is to fulfill the objectively reasonable expectations of the parties." *Werner Indus., Inc. v. First State Ins. Co.*, 548 A.2d 188, 190 (N.J. 1988). Accordingly, even an unambiguous policy may be interpreted contrary to its plain meaning to fulfill to the insured's reasonable expectations. *Id.* at 191. The essence of a claims-made policy is coverage for claims brought against an insured during a policy period. *Zuckerman*, 495 A.2d at 398-99. Of course, an insurer may limit a claims-made policy's coverage "by excluding any claims arising out of any acts or omissions occurring prior to the

---

2 In support of its argument as to when Hartmarx and Sabre first made their claims against JBA, St. Paul does not assert that Hartmarx or Sabre threatened to take legal action against JBA or that Hartmarx or Sabre demanded a refund from JBA.

3 Whether a claim or suit is actually reasonably foreseeable to JBA is an issue that St. Paul characterizes as "irrelevant."

4 For the same reason, the Court rejects St. Paul's argument that the Policy is consistent with the policies obtained by JBA before and after the Policy.

effective date of the policy if the insured, at the effective date, knew or could have reasonably foreseen that such acts or omissions might be expected to be the basis of a claim or suit." 7 Leo R. Russ & Thomas F. Segalla, *Couch on Insurance* § 102:25 (3d ed. 1997); *see Zuckerman*, 495 A.2d at 403 & n.3. Here, St. Paul interprets the Policy to deem a claim or suit foreseeable and "first made" without regard to whether the claim or suit is actually reasonably foreseeable to JBA. The Court predicts that the New Jersey Supreme Court would not find such an interpretation to accord with JBA's objectively reasonable expectations. *Cf. Zuckerman*, 495 A.2d at 403. St. Paul does not argue that the claim by Sabre was actually reasonably foreseeable to JBA before June 30, 1997. Nor does it argue that the claim by Hartmarx was actually reasonably foreseeable to JBA during the 1997-98 policy period. For these reasons, the Court denies St. Paul's motion.

## III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. St. Paul's Motion for Partial Summary Judgment on Policy Interpretation [Docket No. 126 in Civ. No. 01-297; Docket No. 142 in Civ. No. 01-2161] is DENIED.

2. JBA's Motion for Partial Summary Judgment on St. Paul's Coverage Defenses [Docket No. 129 in Civ. No. 01-297; Docket No. 145 in Civ. No. 01-2161] is GRANTED IN PART and DENIED IN PART.

Dated: August 19, 2004

S/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge